1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LORAINE CAMPBELL, individually and as
personal representative of the Estate of JUSTINE
BOOTH,

           Plaintiff,

       v.

STATE OF WASHINGTON, DEPARTMENT
OF SOCIAL AND HEALTH SERVICES,
including but not limited to the Division of
Developmental Disabilities; LASHONDA
MARIE MITCHELL, individually and in her
official capacity acting under the color of state
law; MURINE LEE McGENTRY, individually
and in her official capacity acting under the color
of state law; SONJA PATE, individually and in
her official capacity acting under color of state
law,

           Defendants.

CASE NO. C08-0983-JCC

ORDER

      This matter comes before the Court on Defendants' First Motion for Partial Summary Judgment

(Dkt. No. 28), Plaintiff's Response in opposition (Dkt. No. 32), and Defendants' Reply (Dkt. No. 36).

The Court has carefully considered these papers and their supporting declarations and exhibits and has

determined that oral argument is not necessary. The Court hereby GRANTS the motion and finds and

rules as follows.

ORDER – 1

1    **I.     BACKGROUND**

2          Justine Booth was a developmentally disabled adult who received in-home care under the State

3    Operated Living Alternative ("SOLA") program operated by Defendant Department of Social and

4    Health Services ("DSHS"). (First Am. Compl. ¶ 17 (Dkt. No. 24); Mot. 2 (Dkt. No. 28).) Ever since she

5    was a young child, Justine suffered from grand mal seizures that caused her significant cognitive

6    disability. (First. Am. Compl. ¶ 18 (Dkt. No. 24).) As an adult, Justine had the intellectual capacity of a

7    five-year-old child. (*Id*. ¶ 21.) Justine's mother, Loraine Campbell, was appointed as Justine's legal

8    guardian in 1991, when Justine turned eighteen. (*Id*. ¶ 23.)

9          As part of the SOLA program, Justine received supported living services provided by individuals

10   trained and employed by DSHS. (Resp. 7 (Dkt. No. 32).) The DSHS employees who were responsible

11   for managing Justine's care were made aware of Justine's recurring seizures, and certain protocols were

12   established to be followed during Justine's bath time, among other times, to ensure Justine's safety.

13   (Resp. 7–10 (Dkt. No. 32).) These protocols required Justine's caretakers to frequently supervise Justine

14   while she was in the bathtub, to use a baby monitor as a back-up, to supply Justine with a bathing

15   pillow, and to make sure that Justine wore a helmet except while washing her hair. (*Id*.)

16         On October 10, 2006, DSHS workers Lashonda Marie Mitchell and Murine Lee McGenty were

17   assigned to supervise Justine in her home. (Compl. ¶ 37 (Dkt. No. 24 at 5).) Plaintiff asserts that

18   Mitchell and McGenty inadequately supervised Justine while she bathed that evening and failed to

19   follow the protocols established to keep her safe. (*Id*. ¶¶ 40–45.) As a result, Justine nearly drowned in

20   the bath and died when she was removed from life support a week later. (*Id*. ¶¶ 47–51.) DSHS

21   conducted an investigation and ultimately terminated Mitchell and McGinty in part because of their

22   failure to monitor and supervise Justine during her bath. (*Id*. ¶¶ 57, 62.)

23         In June 2008, Loraine Campbell filed this lawsuit individually and on behalf of her daughter's

24   estate, bringing the following causes of action against DSHS and Mitchell, McGenty, and Sonja Pate,

25   the DSHS employee who managed Justine's care: (1) negligence; (2) violation of Justine's civil rights as

26   ORDER – 2

1  protected by the Fourteenth Amendment; (3) violation of Loraine Campbell's civil rights as protected by

2  the Fourteenth Amendment; and (4) violation of WASH. REV. CODE § 74.34, regarding the abuse of

3  vulnerable adults. (*Id.* ¶¶ 63–85.) In the instant motion, Defendants ask the Court on summary judgment

4  to dismiss with prejudice Plaintiff's state law claims because of the limitations on beneficiaries under

5  Washington survival and wrongful death statutes.

6  **II.    APPLICABLE STANDARD**

7          Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on

8  file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is

9  entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  "A 'material' fact is one that is relevant

10 to an element of a claim or defense and whose existence might affect the outcome of the suit." *T.W.*

11 *Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The moving party

12 bears the initial burden of showing that no genuine issue of material fact exists. *Matsushita Elec. Indus.*

13 *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  If the moving party meets this initial burden, then

14 the party opposing the motion must set forth facts showing that there is a genuine issue for trial. *See*

15 *T.W. Elec. Serv.*, 809 F.2d at 630. The party opposing the motion must "do more than simply show that

16 there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "In response to

17 a summary judgment motion, . . . the [non-moving party] can no longer rest on . . . mere allegations, but

18 must set forth by affidavit or other evidence specific facts, . . . which for the purposes of the summary

19 judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992);

20 FED. R. CIV. P. 56(e). If the nonmoving party fails to establish the existence of a genuine issue of

21 material fact, "the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477

22 U.S. 317, 323–24 (1986).

23 //

24 //

25 //

26 ORDER – 3

**III.     ANALYSIS**

   **A.     Washington Wrongful Death and Survival Laws**

   "In Washington, wrongful death actions are strictly creatures of statute." *Atchison v. Great Western Malting Co.*, 166 P.3d 662, 664 (Wash. 2007). Specifically:

> Washington tort law recognizes two causes of action where a defendant's negligence causes the death of another. Death claims in Washington may be brought pursuant to the wrongful death statutes, RCW 4.20.010 and RCW 4.20.020, and the survival statutes, RCW 4.20.046 and RCW 4.20.060.

*Otani ex rel. Shigaki v. Broudy*, 92 P.3d 192, 194 (Wash. 2004). Pursuant to WASH. REV. CODE § 4.20.010, a decedent's personal representative may maintain an action for damages against the person negligently causing the decedent's death. However, the statute specifically limits the beneficiaries of such an action:

> Every such action shall be for the benefit of the wife, husband, state registered domestic partner, child or children, including stepchildren, of the person whose death shall have been so caused. *If there be no wife, husband, state registered domestic partner, or such child or children, such action may be maintained for the benefit of the parents, sisters, or brothers, who may be dependent upon the deceased person for support*, and who are resident within the United States at the time of his death.

WASH. REV. CODE § 4.20.020 (emphasis added). In other words, the statute creates a two-tiered system of beneficiaries in which the first tier consists of the decedent's spouse and children, who have automatic standing to bring a wrongful death claim under the statute. *Armantrout v. Carlson*, 170 P.3d 1218, 1221 (Wash. Ct. App. 2007). "If a decedent has no spouse or child, a parent may bring a wrongful death claim under the second tier only if the parent is 'dependent upon the deceased for support.'" *Id.* Washington courts interpret "support" to mean "substantial financial dependence." *Id.*

   Washington also has special provisions for the wrongful death of a child; however the child must be under the age of majority: "A mother or father, or both, who has regularly contributed to the support of his or her *minor child*, and the mother or father, or both, of a child on whom either, or both, are dependent for support may maintain or join as a party an action for the injury or death of the child." WASH. REV. CODE § 4.24.010 (emphasis added).

ORDER – 4

1    In addition, Washington's general survival statute, WASH. REV. CODE § 4.20.046, provides in

2  relevant part that:

3        All causes of action by a person or persons against another person or persons shall
         survive to the personal representatives of the former and against the personal
4        representatives of the latter, whether such actions arise on contract or otherwise, and
         whether or not such actions would have survived at the common law or prior to the date
5        of enactment of this section: PROVIDED, HOWEVER, That *the personal representative
         shall only be entitled to recover damages for pain and suffering, anxiety, emotional
6        distress, or humiliation personal to and suffered by a deceased on behalf of those
         beneficiaries enumerated in RCW 4.20.020,* and such damages are recoverable regardless
7        of whether or not the death was occasioned by the injury that is the basis for the action.

8  WASH. REV. CODE § 4.20.046 (emphasis added).

9    Similarly, Washington's special survival statute provides that:

10       No action for a personal injury to any person occasioning death shall abate, nor shall such
         right of action determine, by reason of such death, if such person has a surviving spouse,
11       state registered domestic partner, or child living, including stepchildren, or leaving no
         surviving spouse, state registered domestic partner, or such children, if there is dependent
12       upon the deceased for support and resident within the United States at the time of
         decedent's death, parents, sisters, or brothers; but such action may be prosecuted, or
13       commenced and prosecuted, by the executor or administrator of the deceased, in favor of
         such surviving spouse or state registered domestic partner, or in favor of the surviving
14       spouse or state registered domestic partner and such children, or if no surviving spouse or
         state registered domestic partner, in favor of such child or children, *or if no surviving
15       spouse, state registered domestic partner, or such child or children, then in favor of the
         decedent's parents, sisters, or brothers who may be dependent upon such person for
16       support,* and resident in the United States at the time of decedent's death.

17  WASH. REV. CODE § 4.20.060 (emphasis added).

18     In sum, therefore, "Washington's four interrelated statutory causes of action for wrongful death

19  and survival each require that parents be 'dependent for support' on a deceased adult child in order to

20  recover." *Philippedes v. Bernard*, 88 P.3d 939, 944 (Wash. 2004).

21     **B.    Discussion**

22     Plaintiff does not dispute that Lorraine Campbell, Justine's mother, was not financially

23  dependent upon Justine. (Defs.' First Req. for Admis. and Resps. Thereto No. 7 (Dkt. No. 29-2 at 3).)

24  Nor do the parties dispute that Justine was born in 1972 and was therefore over eighteen years old, the

25  legal age of majority in Washington when she died in 2006. (Petition for Guardianship 1 (Dkt. No. 33-2

26  ORDER – 5

at 1).) Therefore, Plaintiff does not have standing to sue under Washington's wrongful death or survival statutes, and Defendants argue that they are therefore entitled to summary judgment on Plaintiff's state law claims.

Plaintiff contends, however, that (1) Justine should not be considered an adult for purposes of the child wrongful death statute, WASH. REV. CODE § 4.24.010, and that (2) if Justine is found to be an adult for purposes of that statute, then the statute is unconstitutional as applied to parents of severely disabled adult children. (Resp. 13–19 (Dkt. No. 32).)

### 1.    Whether Justine is a "Minor Child" For Purposes of Washington Revised Code § 4.24.010

Plaintiff argues that because Justine "did not enjoy the rights and opportunities deemed fundamental to most adults," she should not be considered a "minor child" for purposes of Washington Revised Code § 4.24.010. (*Id*. at 14.) Plaintiff points out that because Loraine Campbell was Justine's legal guardian, Justine did not have the legal right to marry or to make social decisions for herself and therefore could not obtain one of the statutorily recognized first tier of beneficiaries under the general wrongful death statute, WASH. REV. CODE § 4.20.020, such as a husband or children. (Resp. 14 (Dkt. No. 32).) In addition, because she could not hold gainful employment, she could not provide financial support to a parent or sibling and thereby obtain a beneficiary in the second tier of that statute. (*Id*.) As such, Plaintiff argues, she could *never* recover under Washington's wrongful death statutes. Plaintiff argues that to consider Justine an adult for purposes of her estate's wrongful death action, while she had none of the basic rights associated with adulthood, would be unfair. (*Id*. at 15.)

The child wrongful death statute, WASH. REV. CODE § 4.24.010, does not define "minor child." However, for the purposes of that statute, "[t]he age of majority is defined at RCW 26.28.010, which states: 'Except as otherwise specifically provided by law, all persons shall be deemed and taken to be of full age for all purposes at the age of eighteen years.'" *Burt v. Ross*, 715 P.2d 538, 539 (Wash. Ct. App. 1986) (applying Washington's legal definition of majority to WASH. REV. CODE § 4.24.010). Plaintiff

ORDER – 6

points to no authority for the proposition that an incompetent or disabled person over the age of eighteen is a "minor" for purposes of the child wrongful death statute. The Court notes that in other statutes, when the legislature intended to include mentally incompetent or disabled persons in the same category as minors, it has done so explicitly. *See, e.g.*, WASH. REV. CODE § 4.16.190(1) (providing that a statute of limitations is tolled while a person is under the age of eighteen years or incompetent or disabled to such a degree that he or she cannot understand the nature of the proceedings); WASH. REV. CODE § 5.60.030 (regarding competency of witnesses). The legislature did not make such an intent explicit in the statute at issue. Even if the Court believed the legislature intended to include profoundly disabled persons in the same category as "minor" children, the Court "may not amend an unambiguous statute merely because [the Court] believe[s] that the Legislature intended something else but failed to express it adequately." *Masunaga v. Gapasin*, 790 P.2d 171, 174 (Wash. Ct. App. 1990) (*citing Vita Food Prods., Inc. v. State*, 587 P.2d 535, 536 (Wash. 1978)). Without any legal authority supporting Plaintiff's position, the Court must find that Justine is not a "minor child" under § 4.24.010.

> ### 2.    Whether Washington Revised Code § 4.24.010 is Unconstitutional as Applied

Plaintiff argues that "[b]oth the Federal and State Constitutions protect against the denial of individual rights based upon untenable grounds." (Resp. 15 (Dkt. No. 32) (*citing* U.S. CONST. amend. XIV, § 1; WASH. CONST. art. I, § 12)[1].) Plaintiff contends that Washington's child wrongful death

---

[1]The Fourteenth Amendment, Section 1, provides that:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Article I, Section 12 of the Washington Constitution provides that:

No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong

ORDER – 7

1    statute, WASH. REV. CODE § 4.24.010, is unconstitutional as applied to parents of adult children with a

2    severe developmental disability because there is no rational basis for treating parents of minor children

3    and parents of adult children with severe developmental disabilities differently. (*Id*. at 17.)

4         In *Philippides v. Bernard*, the Washington Supreme Court analyzed the constitutionality of the

5    child wrongful death statute. 88 P.3d 939, 931 (Wash. 2004). That case consolidated four suits brought

6    by non-dependent parents of adult deceased children. The court answered the question of whether

7    § 4.24.010's requirement of dependency for parents of adult children violates the equal protection clause

8    of the United States Constitution or the privileges and immunities clause of Washington State's

9    Constitution. *Id*. at 942, 946–47. The court reviewed the statute using rational basis scrutiny and found

10   that the statute was consistent with both the Federal and State constitutions because the limitations

11   placed on parents' recovery reasonably relate to the statute's purpose of compensating those parties

12   most directly and significantly affected by the loss of a child.

13        Plaintiff in the instant case argues that *Philippides* "demonstrates that while there may be tenable

14   grounds for distinguish [sic] between parents of legally-competent adult children and minor children,

15   that distinction evaporates when comparing parents of profoundly incapacitated children and parents of

16   minor children." (Resp. 17 (Dkt. No. 32).) The Court notes, however, that the Washington Supreme

17   Court found that the law passed muster despite the fact that at least two of the deceased children in

18   *Philippedes* could arguably be considered mentally incompetent or severely disabled. Kelly Loomis was

19   a 34-year-old unmarried man who suffered from schizophrenia and died following a struggle with police

20   during a schizophrenic episode. *Philippedes*, 88 P.3d at 942. Perhaps more akin to the situation

21   presented here, John Carlisle was a 39-year-old unmarried man with cerebral palsy who lived with his

22   parents. *Id*. It is not clear to the Court therefore that the facts presented here are materially different from

23   _____

24        to all citizens, or corporations.

25

26   ORDER – 8

1    those already considered by the Washington State Supreme Court.

2        In addition, the Court finds that the statute survives rational basis scrutiny even when applied to

3    the parents of severely disabled children. Where a suspect classification or a fundamental right is not

4    implicated, the court reviews the statute using a rational basis standard. *Id*. at 946; *see also Lee v. City of*

5    *Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) ("Because the disabled do not constitute a suspect class

6    for equal protection purposes, a governmental policy that purposefully treats the disabled differently

7    from the non-disabled need only be rationally related to legitimate legislative goals to pass

8    constitutional muster."). "In reviewing a statute, [Washington courts] will construe a statute as

9    constitutional if at all possible." *Philippedes*, 88 P.3d at 946 (*citing State ex rel. Faulk v. CSG Job Ctr.*,

10   816 P.2d 725, 729 (Wash. 1991)). Using a rational basis standard, "[t]he statute is presumed

11   constitutional and the party challenging it has a heavy burden of proof." *Id*. (*citing Cosro, Inc. v. Liquor*

12   *Control Bd.*, 733 P.2d 539, 543 (Wash. 1987)). Under the rational basis test, the court determines:

13   
14        (1) whether the legislation applies alike to all members of the designated class, (2)
         whether there are reasonable grounds to distinguish between those within and those
         without the class, and (3) whether the classification has a rational relationship to the
15       purpose of the legislation.

16   *Philippedes*, 88 P.3d at 946 (*citing Convention Ctr. Coalition v. City of Seattle*, 730 P.2d 636 (Wash.

     1986)).
17   
18        Washington courts have held that § 4.24.010 treats all persons in each of the categories it

19   establishes similarly. *Id*.; *Masunaga*, 790 P.2d at 175–76. The statute provides relief to a mother or

20   father, or both, who has regularly contributed to the support of his or her minor child, and to the mother

21   or father, or both, of a child on whom either, or both, are dependent for support. All parents of adult

22   children—whether or not the children are disabled—must be financially dependent on the children to

23   recover; all parents of minor children—whether or not the children are disabled—who have regularly

24   contributed to the support of the children may recover. The Court finds that the statute applies alike to

25   all members of the designated class.

26   ORDER – 9

1 The second prong requires there be a reasonable basis for distinguishing between parents who

2 are able to recover from parents who are not. "The one challenging the classification must overcome a

3 presumption that the classification is reasonable." *Philippedes*, 88 P.3d at 947 (citation omitted). In

4 *Masunga*, the Washington Court of Appeals held that there were reasonable grounds to distinguish

5 between parents who were financially dependent upon an adult child and those who were not because

6 parents who are financially dependent on an adult child are affected differently and more directly by that

7 child's death than are non-dependent parents. 790 P.2d at 176 (holding that "[t]he fact that non-

8 dependent parents . . . suffer emotionally from a wrongful death does not render the statutory

9 classification unreasonable for purposes of equal protection analysis."). The Washington Supreme Court

10 upheld this finding, stating that "[o]bviously a parent who is dependent on a child for material well-

11 being and the basic physical necessities of life is impacted in a way unlike an independent parent."

12 *Philippedes*, 88 P.3d at 947. The court also found that there was a reasonable basis for distinguishing

13 between the parents of adult and minor children because a minor child's needs for love, guidance, and

14 support were not the same as those of an adult child, and different considerations applied to adult

15 children. *Philippedes*, 88 P.3d at 947. For instance:

16
17  The legislature does not require parents to support their adult children financially, or in any other way. Society does not hold parents responsible for the actions of their adult children. Many of the strictures binding children to their parents are released when the child reaches the age of majority.

18
19 *Id.*

20 Plaintiff argues that Washington has, in fact, imposed financial and support obligations on

21 parents with developmentally disabled children beyond those imposed on parents whose children who

22 are not incapacitated. (Resp. 18 (Dkt. No. 32).) They cite *Schultz v. Western Farm Tractor Co.* for the

23 proposition that:

24  the legal duty of a parent to support his normal children ceases at the age of majority, but the rule is not the same with respect to his defective children, whether the defect be mental or physical. To these he owes a continuing obligation of support, which ceases only when the necessity for support ceases.

25

26 ORDER – 10

1    190 P. 1007, 1008 (Wash. 1920). However, *Schultz* did not hold that parents of minor children and

2    parents of disabled children have the same burdens and obligations, such that the child wrongful death

3    statute is unconstitutional as to parents of disabled children. Rather, *Schultz* involved the distribution of

4    a fund as between a decedent's widow and his disabled child from a former wife. *Id.* The widow

5    appealed the decision to apportion a certain amount to the son, and the Washington Supreme Court

6    justified the award on the rationale quoted above. The court found it equitable to allow the son to

7    receive benefits from the fund because of the particular circumstances of that case. The Court does not

8    find *Schultz* to be dispositive of the issues herein.

9           Plaintiff also cites *Childers v. Childers*, a case that cites *Schultz* for the proposition that "[i]t has

10   long been the rule in Washington that a court could require a divorced parent to support a defective child

11   beyond majority." 575 P.2d 201, 209 (Wash. 1978). However, in that case, the court extrapolated in part

12   from that rule in holding that, in the context of a divorce decree, a trial court can, under certain

13   circumstances, order "support for the education of normal children past the age of majority." *Id.* That

14   case highlights the fact that Washington courts may impose some obligations on parents of adult

15   children whether or not they are disabled.

16          Loraine Campbell became Justine's legal guardian by petitioning the King County Superior

17   Court because she expected her daughter to need ongoing assistance. (Guardianship Petition (Dkt. No.

18   33-2 at 1–7).) This relationship required an adjudication based on the particular facts of the case.

19   Plaintiff has not shown the Court that Ms. Campbell was legally required to assume such an obligation.

20   Further, a particular child's developmental disabilities and the continuing obligations borne by his or her

21   parents surely vary from case to case. This proposition is embraced in Washington's laws on

22   guardianship, which are based on the legislature's express intent "to protect the liberty and autonomy"

23   of all persons, including those with "incapacities" and unique needs, and as such, the legislature has said

24   that "their liberty and autonomy should be restricted through the guardianship process only to the

25   maximum extent necessary to adequately provide for their own health or safety, or to adequately

26   ORDER – 11

1  manage their financial affairs." WASH. REV. CODE § 11.88.005. Plaintiff has not persuaded the Court

2  that Washington law requires *all* parents of adult children with developmental disabilities to remain

3  equally responsible for their adult children as parents of minor children.

4      "The third question to be addressed in equal protection analysis is whether the challenged

5  classification has a rational relationship to the purpose of the legislation." *Masunaga*, 790 P.2d at 176.

6  Using the rational basis test:

7      a legislative classification will be upheld unless it rests on grounds wholly irrelevant to
        the achievement of the State's objective. State legislatures are presumed to have acted

8      within their constitutional power despite the fact that, in practice, their laws result in
        some inequality. A statutory discrimination will not be set aside if any state of facts

9      reasonably may be conceived to justify it. The challenger must show conclusively that
        the classification is contrary to the legislation's purposes.

10

11 *Id*. (internal quotations and citations omitted).

12      The purpose of this legislation is "to compensate parents for the loss of a child." *Philippedes*, 88

13 P.3d at 947. The Washington Supreme Court held that:

14     The limitations placed on parents relate to the statute's attempt to compensate those
       parties most directly and significantly affected. While the lines drawn in RCW 4.24.010

15     will obviously preclude recovery for many parents devastated by the loss of an adult
       child, a statute is not unconstitutional for failing to "attack every aspect of a problem."

16 *Id*. The Court bears in mind that this observation was made in a case in which, as mentioned above, one

17 of the adult children had cerebral palsy and lived with his parents; like Loraine Campbell, Mr. Carlisle's

18 parents provided ongoing support and were no doubt devastated by the loss of their child, which

19 occurred because of another's negligence. However, "the rational basis standard does not require that

20 the state choose the fairest or best means of advancing its goals[.]" *Robinson v. Marshall*, 66 F.3d 249,

21 251 (9th Cir. 1995). The Court notes that parents of disabled children and non-disabled children are

22 treated equally under the statute. Both may recover for the loss of a minor child and both are precluded

23 from recovering for the loss of an adult child, barring substantial financial dependence upon the child. It

24 appears from the legislative materials prepared during recent proposed amendments to the statute, which

25 did not become law, that the legislature considered the significant cost of expanding the range of

26 ORDER – 12

potential beneficiaries to include parents who were not financially dependent on their adult children. *See, e.g.*, H.B. Rep. on E.S.H.B. 1873, 60th Leg. Sess. (Wash. 2008) (noting also that the legislature heard public testimony that the amendments were "important for people with disabilities."). The Court finds that age of majority and financial dependence are reasonable bright-line tests for determining how to compensate those parents most severely affected by the loss of a child while also protecting the State's resources. Accordingly, the Court declines to find that § 4.24.010 is unconstitutional as applied to parents of adult children with developmental disabilities.

**IV.   CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS Defendants' First Motion for Partial Summary Judgment (Dkt. No. 28). Plaintiff's state law claims are hereby DISMISSED. Plaintiff's federal claims survive for trial.

DATED this 13th day of February, 2009.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER – 13